UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ERIC KETAYI and MIRYAM KETAYI, both individually and on behalf of all others similarly situated and for the benefit of the general public,

Plaintiffs,

v.

HEALTH ENROLLMENT GROUP, a Florida corporation; ADMINISTRATIVE CONCEPTS, INC., a Pennsylvania corporation; AXIS, a Bermuda corporation d/b/a Axis Insurance Company; AXIS SPECIALTY U.S. SERVICES, INC., a Delaware corporation; ALLIANCE FOR CONSUMERS USA, a Nebraska corporation; HEALTH PLAN INTERMEDIARIES HOLDINGS, LLC, a Delaware corporation; HEALTH INSURANCE INNOVATIONS HOLDINGS, INC., a Delaware corporation; FIRST HEALTH GROUP, CORP., a Delaware corporation; COST

Case No.: 20-cv-1198-GPC-KSC

**ORDER:**

**(1) GRANTING IN PART AND DENYING IN PART DEFENDANT ADMINISTRATIVE CONCEPTS, INC.'S MOTION TO DISMISS COUNTS 1, 3, 4, 5, AND 7 OF THE SAC; AND**

**(2) GRANTING IN PART AND DENYING IN PART DEFENDANTS HEALTH PLAN INTERMEDIARIES HOLDINGS, LLC AND HEALTH INSURANCE INNOVATIONS HOLDINGS, INC.'S MOTION TO DISMISS COUNTS 1, 2, AND 3 OF THE SAC**

**[ECF Nos. 109, 112.]**

CONTAINMENT GROUP, Inc., a
Delaware corporation,

                              Defendants.

Before the Court are Motions to Dismiss in Part the Second Amended Complaint of Plaintiffs Eric Ketayi and Miryam Ketayi ("Plaintiffs"), filed by Defendants Administrative Concepts, Inc. ("ACI"), Health Plan Intermediaries Holdings, LLC ("HPI"), and Health Insurance Innovations Holdings, Inc. ("HII") (collectively, "Moving Defendants"). ECF Nos. 109, 112. The motions have been fully briefed. ECF Nos. 123, 124, 127, 128. Upon consideration of the briefing of the parties and for the reasons set for the below, the Court GRANTS in part and DENIES in part the motions to dismiss.

## I.    BACKGROUND[1]

Plaintiffs Eric and Miryam Ketayi are married with two children and live in San Diego County. ECF No. 95 ("SAC") ¶¶ 16–17, 109. Until the fall of 2016, Plaintiffs had health insurance through Blue Cross/Blue Shield that provided coverage for themselves and their children. *Id.* ¶ 109. In the face of increasing premiums, Plaintiffs decided to look for less expensive insurance options that provided comparable PPO coverage to their existing plan. *Id.* Plaintiffs came across the website of Defendant Health Enrollment Group ("HEG"), which included statements like "Our PPO's work with over 80% of physicians Nationwide," and "We work with Major Insurance Companies in all 50 states" to provide "Private Health Insurance," "Obamacare," and "PPO" plans. *Id.* ¶ 110. During three separate calls on November 22, 2016, Plaintiffs spoke with representatives of HEG, HPI, HII, or Cost Containment Group ("CCG"), although the representatives did not identify what company they worked for. *Id.* ¶ 112, n.14. The representative,

---

[1] The factual background in this section is drawn from Plaintiffs' Second Amended Complaint.

identified as David Martinez, described the plan to Plaintiffs as a PPO plan and compared it to Plaintiffs' existing Blue Cross/Blue Shield coverage. *Id.* The representative followed a script that confused Plaintiffs, and claimed that Plaintiffs would have small co-pays, no deductible, and that this seemingly comprehensive coverage would apply were Plaintiffs or their children to visit almost any doctor in the country. *Id.* ¶ 113. The representative also told Plaintiffs that the PPO plan would cost $379 per month, less than Plaintiffs' Blue Cross/Blue Shield plan, because Defendants aggregated individuals from all over the country and could negotiate "great deals" for consumers. *Id.* ¶ 114. In responding to Plaintiffs' questions about what the plan would cover, the representative stated the coverage was PPO and comprehensive and excluded pregnancy and mental health care. *Id.* ¶ 115. Relying on the Defendants' statements and omissions of material fact, Plaintiffs then decided to initiate the process of purchasing what they believed to be comprehensive health insurance. *Id.* ¶ 116.

The representative then told Plaintiffs they would be transferred to an agent who could verify that they qualified for the Plan, who Plaintiffs believe was an employee of ACI, CCG, or Axis Defendants.[2] *Id.* ¶ 117. Before the representative transferred Plaintiffs to the agent, he told them that the agent would read them a series of statements and that Plaintiffs would need to say yes to all of the statements if they wished to purchase Defendants' product, that Plaintiffs should ignore statements that did not apply to them or the product they were purchasing, and that Plaintiffs should not interrupt or ask questions, or they would be forced to start the process over. *Id.* Plaintiffs felt pressured to agree to the agent's verification statements based on the representative's

---

[2] Plaintiffs use the term "Axis Defendants" to refer collectively to Defendant Axis and Defendant Axis Specialty U.S. Services, Inc. SAC ¶ 47.

directions and accordingly answered yes to every question, despite not understanding or agreeing with everything that was being said. *Id.* ¶ 118.

On the same day, November 22, 2016, Plaintiffs purchased Defendants' product (the "Liberty Health Plan") and continued to pay "premiums" for Defendants' coverage from November 2016 until at least August 2017. *Id.* ¶¶ 16–17, 119, 124. After Plaintiffs' purchase, Defendants mailed Plaintiffs a card that said "Preferred Provider (PPO) Network Access" and included the URL to a website which stated it was their "national choice for PPO network solutions." *Id.* ¶ 120. Plaintiffs assert that Defendants made these representations with the knowledge that they had not actually sold, underwritten, or provided any sort of PPO plan or otherwise comprehensive coverage to Plaintiffs. *Id.*

On July 29, 2017, Plaintiff Eric Ketayi was admitted to Cedars-Sinai Hospital for back surgery. *Id.* ¶ 122. For his six-night hospital stay, surgery, and other necessary care, the health plan Plaintiffs had purchased from Defendants covered $1,500. *Id.* ¶ 124. Plaintiffs were responsible for $194,366.73. *Id.* Plaintiffs attempted to dispute the lack of coverage, but Axis Defendants—the only Defendant Plaintiffs were able to reach—did not alter its level of coverage or agree to further contribute. *Id.* ¶ 125.

On June 26, 2020, Plaintiffs filed their initial putative class action complaint.[3] ECF No. 1. On September 11, 2020, Plaintiffs filed their First Amended Complaint ("FAC"). ECF No. 53. On February 2, 2021, the Court granted in part and denied in part Defendants' motions to dismiss the FAC. ECF No. 89. On April 23, 2021, Plaintiffs filed the SAC, asserting putative class claims for (1) violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (2) false and

---

[3] Plaintiffs' initial complaint included as defendants Liberty Health and Juanita Nicolucci, who are not included as defendants in the FAC.

4

misleading advertising under the False Advertising Law ("FAL") (against HEG, HPI, HII, Axis Defendants, and CCG), Cal. Bus. & Prof. Code § 17500 *et seq.* (against HEG, HPI, HII, Axis Defendants, and CCG); (3) fraud and deceit, Cal. Civ. Code § 1709; (4) aiding and abetting fraud; (5) conspiracy to commit fraud; (6) violation of Cal. Ins. Code § 781 (against Axis only); (7) violation of the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*; and (8) conspiracy to violate federal civil RICO, 18 U.S.C. § 1961 *et seq.* SAC ¶¶ 141–222. On May 19, 2021, ACI filed its motion to dismiss counts 1, 3, 4, 5, and 7 of the SAC. ECF No. 109. On May 21, 2021, HII and HPI filed their motion to dismiss counts 1, 2, and 3 of the SAC. ECF No. 112.

## II.    LEGAL STANDARD

Rule 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*., 901 F.2d 696, 699 (9th Cir. 1990). Under Rule 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In sum, for a complaint

to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citations omitted).

## III.  DISCUSSION

Moving Defendants each move to dismiss claims from the SAC.  ACI seeks to dismiss the UCL claim (count 1), the claim for fraud and deceit as well as aiding and abetting fraud and conspiracy to commit fraud (counts 3, 4, and 5), and the direct RICO claim (count 7).  ECF No. 109.  HII and HPI seek to dismiss the UCL claim (count 1), FAL claim (count 2), and claim for fraud and deceit (count 3).  ECF No. 112.  Plaintiffs oppose.  ECF Nos. 123, 124.

### A. Counts 3, 4, and 5: Fraud and Deceit and Related Claims

The Court first addresses whether the SAC states a claim for fraud and deceit against ACI, HII, and HPI and aiding and abetting fraud or conspiracy to commit fraud against ACI.

### i.    *Fraud and Deceit under Cal. Civ. Code § 1709*

Under California law, "one commits fraudulent deceit 'who willfully deceives another with intent to induce him to alter his position to his injury or risk.'"  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1146 (9th Cir. 2012) (quoting Cal. Civ. Code § 1709).  The elements of an action for fraud or deceit are "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."  *City Sols., Inc. v. Clear Channel Commc'ns*, 365 F.3d 835, 839 (9th Cir. 2004) (citation omitted).

Under Rule 9(b), a complaint must state with particularity the circumstances constituting fraud.  Fed. R. Civ. P. 9(b).  Malice, intent, knowledge, and other conditions

6

of a person's mind may be alleged generally. *Id.* To satisfy this heightened pleading requirement, the plaintiff must set forth "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (internal citations omitted). In addition, the complaint must indicate "what is false or misleading about a statement, and why it is false" and "be specific enough to give defendants notice of the particular misconduct that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) (internal citations omitted).

### ACI

ACI argues that the SAC fails to attribute any false or misleading statements to ACI with the particularity required under Rule 9(b). ECF No. 109 at 15–16. Plaintiffs counter that the SAC adequately alleges ACI committed fraud by omission by ignoring requests for information and failing to correct Plaintiffs' belief that they were paying for legitimate health insurance. ECF No. 123 at 10–11. On reply, ACI argues that the SAC does not adequately allege that ACI had a duty to disclose but purposefully concealed material information from Plaintiffs. ECF No. 127 at 5–7.

A claim for fraud or deceit can arise from the concealment of information rather than an affirmative misrepresentation. *See Hynix Semiconductor Inc. v. Rambus Inc.*, 441 F. Supp. 2d 1066, 1075 (N.D. Cal. 2006) (citing Cal. Civ. Code § 1710). "[I]n order to prevail on their fraudulent omission claim, plaintiffs must show that: (1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff; (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the

7

plaintiff must have sustained damage." *Jordan v. Paul Fin., LLC*, 285 F.R.D. 435, 454 (N.D. Cal. 2012) (citing *Hahn v. Mirda*, 147 Cal.App.4th 740 (2007)).

Plaintiffs specifically allege that ACI "purposefully ignored Plaintiffs' requests for information concerning the 'benefits' provided to conceal the true nature of the 'sham insurance'." SAC ¶ 49. Accepting this allegation as true, the Court rejects ACI's suggestions that the SAC leaves open the possibility that the lines were busy or there was a call redirection issue. ECF No. 127 at 6. The Court also concludes that, viewing the SAC as a whole, Plaintiffs have identified the material facts that were concealed with the requisite specificity: namely, the actual benefits provided by the Liberty Health plan had little value compared to what Plaintiffs allege they were promised when making the initial purchase. SAC ¶¶ 49, 125. However, the SAC does not identify the timing of these attempted requests for information, though it does suggest that they may have occurred after Plaintiffs received the Explanation of Benefits indicating that the Liberty Health Plan would cover only $1,500 of Plaintiff Eric Ketayi's hospital bill. *Id.* ¶¶ 124–25. The timing is relevant because if ACI's alleged concealment occurred only after the harm to Plaintiffs occurred, the causation element of the fraud claim would not be met. It is not clear from the SAC whether Plaintiffs continued to pay premiums after their attempts to get in touch with ACI, and accordingly it is not clear that ACI's alleged concealment by screening Plaintiffs' calls caused Plaintiffs any further damage. *See* SAC at 48 (Figure 17) (indicating plan was cancelled in August 2017). Thus, because the SAC does not identify whether any requests for information to ACI occurred prior to the damages sustained by Plaintiffs, the Court finds that Plaintiffs have not adequately pleaded a fraudulent concealment claim arising from the screening of their calls.

A separate question is whether Plaintiffs have adequately alleged that ACI had a duty to disclose prior to Plaintiffs' requests for information. "A duty to disclose exists if one of four circumstances exist: (1) the defendant is in a fiduciary relationship with the

plaintiff; (2) the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff, or (4) the defendant makes partial representations but also suppresses some material facts." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 986 (N.D. Cal. 2009) (citing *LiMandri v. Judkins*, 52 Cal.App.4th 326, 337 (1997)).  The second, third, and fourth circumstances are not raised by the SAC, because Plaintiffs do not allege that ACI had exclusive knowledge, that ACI engaged in "active" concealment outside of ignoring requests for information, or that ACI made partial representations.  And while Plaintiffs are correct that insurance plan administrators have been held to owe certain duties to insureds, *see Mintz v. Blue Cross of California*, 172 Cal. App. 4th 1594, 1611 (2009), Plaintiffs have not adequately alleged that ACI had a fiduciary duty to affirmatively provide them with information about the plan benefits outside of responding to requests for information or administering claims.[4]  In other words, the SAC does not plead facts that indicate ACI had a duty to contact Plaintiffs to correct the other defendants' misrepresentations, and thus Plaintiffs' allegation that ACI "did nothing to correct [their] belief that they had been sold comprehensive medical coverage," SAC ¶ 48, does not give rise to a claim for fraudulent omission or concealment.

Accordingly, the Court finds that SAC fails to plead a direct fraud or deceit claim against ACI and **GRANTS** ACI's motion to dismiss count 3.

\ \ \

\ \ \

---

[4] The cases that Plaintiffs cite for the proposition that insurance administrators have a fiduciary duty to disclose plan information involve Employee Retirement Income Security Act (ERISA) fiduciaries, which are defined by statute, and thus are of limited relevance in determining whether ACI owed a fiduciary duty to make any affirmative disclosures in this non-ERISA case.  *See* 29 U.S.C. § 1002(21)(A) (defining ERISA fiduciary); *Barker v. Am. Mobile Power Corp.*, 64 F.3d 1397, 1403 (9th Cir. 1995), *as amended* (Nov. 15, 1995); *Echague v. Metro Life Isn. Co.*, 43 F. Supp. 3d 994, 1014 (N.D. Cal. 2014).

9

**HII and HPI**

HHI and HPI argue that the SAC's allegations regarding HHI and HPI's conduct—namely, employing the sales representative to whom Plaintiffs spoke and creating lead generator websites—are inconsistent and not based on sufficient facts to satisfy the particularity requirement under Rule 9(b).  ECF No. 112 at 11–14.  HII and HPI also argue that the websites do not contain any misrepresentations and that Plaintiffs have not pleaded that they relied on the statements on those websites.  *Id.* at 14–15.

In the Court's order dismissing the FAC in part, the Court found Plaintiffs had failed to plead that they had seen the lead generator websites attributed to HII and HPI and thus did not allege that they relied on those alleged misstatements or were harmed by them.  ECF No. 89 at 39.  The SAC again alleges that HII and HPI develop or maintain lead generating websites that "uniformly claim to offer a broad selection of comprehensive health care insurance policies," when such plans do not exist.  SAC ¶¶ 87, 89 (alleging that websites advertised Liberty Health Plan with phrases such as "Avoid Tax Penalty").  As the Court found in its previous order, Plaintiffs sufficiently allege that such statements on the websites were misrepresentations because they led consumers to believe the sites advertise health insurance that will allow them to avoid the ACA penalty for not being enrolled in a qualified health insurance plan, when in reality they do not.[5] ECF No. 89 at 31.

The question remains whether Plaintiffs have adequately alleged that they relied on these statements by HII and HPI, causing their damages.  The SAC now alleges that

---

[5] Plaintiffs also newly allege that HII and HPI played a part in developing plan "fulfillment" materials sent to consumers that "tout PPO network access" and "continue[] the misrepresentations made to Plaintiffs."  SAC ¶¶ 106, 121.  Because the Court finds Plaintiffs state a claim for fraud against HII and HPI based on the websites, the Court declines to determine whether the SAC alleges with adequate specificity the misrepresentations included in these materials or sufficiently identifies who made the statements.

"consumers, including Plaintiffs[,] viewed websites owned, developed and/or run by" HII and HPI and that "on information and belief, Plaintiffs viewed and relied on deceptive advertising disseminated by" HII and HPI. SAC ¶¶ 57, 89, 153. Plaintiffs further allege that the lead generating websites "gave credence to Plaintiffs' belief that the Liberty Health Plan was ACA-compliant, comprehensive insurance coverage and was a substantial contributing factor to Plaintiffs' decision to purchase the Liberty Health Plan." *Id.* ¶ 57. Plaintiffs contend that it is permissible to allege that they saw websites developed by HII and HPI "on information and belief" during their search for health insurance because it is impossible for them to know with certainty that HII and HPI operated the websites Plaintiffs saw in 2016, and because they have provided a strong factual basis for their belief that HII and HPI were in fact are responsible for the websites. ECF No. 124 at 24–25.

"Claims made on information and belief are not usually sufficiently particular" to meet the standards of Rule 9(b), "unless they accompany a statement of facts on which the belief is founded." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1042 (9th Cir. 2010); see also *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (explaining that the particularity requirement is "relaxed as to matters within the opposing party's knowledge"). In the SAC, Plaintiffs allege that in its initial public offering prospectus, HII touted its platform as allowing for "mass distribution and online enrollment in [its] large and diverse portfolio of affordable health insurance offerings" and described itself as designing and structuring insurance products as well as marketing those products to individuals. SAC ¶¶ 67–68. The identity of the entity behind the website is the type of information that is uniquely within defendants' knowledge, and the information regarding HII's overall business supports Plaintiffs' allegation that HII and HPI developed or operated the websites. The Court therefore

finds that the SAC sufficiently identifies the basis for Plaintiffs' conclusion that HII and HPI were responsible for the lead generating websites they viewed.

HII and HPI also contend that while Plaintiffs allege they saw these websites, they do not allege that they saw any specific misrepresentations. ECF No. 128 at 7. The Court disagrees. The SAC gives HII and HPI sufficient notice of the misrepresentations: the advertisements for "Top Rated Carriers," "Health Insurance," and "Avoid Tax Penalty," and Plaintiffs specifically allege that "use of these phrases [misled] consumers like Plaintiffs, including Plaintiffs who viewed websites owned, developed and/or run by" HII and HPI. SAC ¶ 57. Though not artfully stated, this paragraph indicates that Plaintiffs allege they viewed the specific phrases identified. Given that the purpose of Rule 9(b) is to put defendants on notice of the particular fraudulent conduct alleged, the SAC satisfies this requirement. Plaintiffs also allege that the websites were "a substantial contributing factor" in their purchase by causing them to believe that the Liberty Health Plan was comprehensive health insurance. *Id.* As "a 'plaintiff is *not* required to allege that the challenged misrepresentations were the *sole* or even the *decisive* cause of the injury-producing conduct," *Moore v. Mars Petcare US*, Inc., 966 F.3d 1007, 1020 (9th Cir. 2020) (quoting *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 327 (2011)) (emphasis in original), the Court concludes that Plaintiffs have cured the deficiencies related to causation and reliance that the Court identified in its previous order dismissing the FAC in part.

Accordingly, the Court **DENIES** HII and HPI's motion to dismiss count 3.

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

*ii.    Secondary Fraud Claims*

ACI also seeks to dismiss Plaintiffs' claims for aiding and abetting fraud or deceit and conspiracy to commit fraud.[6]  ECF No. 109 at 17–18.  The Court previously found that Plaintiffs had failed to clearly allege secondary liability claims for fraud.  ECF No. 89 at 38.  Plaintiffs argue that additional allegations in the SAC now meet the requirements for both secondary liability claims.

**Aiding and Abetting**

"Under California law, '[l]iability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.'"  *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1118 (C.D. Cal. 2003) (quoting *Fiol v. Doellstedt*, 50 Cal.App.4th 1318, 1325–26 (1996)); *see also In re First All. Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006).

Because even "ordinary business transactions" can qualify as substantial assistance, the Ninth Circuit has recognized that under California law, "[k]nowledge is the crucial element" of aiding and abetting liability.  *Id.* at 995 (quoting *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1145 (2005)).  The SAC alleges that ACI's administration of the health plans was a crucial component of Defendants' scheme.  SAC ¶ 51.  This is sufficient to satisfy the substantial assistance prong at the motion to dismiss stage.  *Cf. In re First All. Mortg. Co.*, 471 F.3d at 995 ("[Defendant] admits that it

---

[6] ACI also argues that the Court did not grant Plaintiffs leave to amend to add new causes of action when it dismissed the FAC with leave to amend.  ECF No. 109 at 16–17.  But the Court's previous order did not place express limitations of Plaintiffs' ability to amend except with respect to the California Legal Remedies Act claim, and in any case Plaintiffs' secondary liability claims are closely connected to the primary tort of fraud or deceit, which was pleaded in the previous complaint.

knowingly provided 'significant assistance' to [the company's] *business,* but distinguishes that from providing substantial assistance to *fraud.* In a situation where a company's whole business is built like a house of cards on a fraudulent enterprise, this is a distinction without a difference.").

The more important question is whether Plaintiffs have adequately alleged that ACI's assistance to fraud was knowing. Under Rule 9(b), knowledge can be alleged generally. Fed. R. Civ. P. 9(b). A complaint will sufficiently allege scienter if it asserts that the alleged aider and abettor had actual knowledge of a specific primary violation. *See Neilson*, 290 F. Supp. 2d at 1120. *But see Casey*, 127 Cal. App. 4th at 1153 (conclusory allegation that defendants acted with knowledge of "primary wrongdoing" did not suffice). Actual knowledge can be shown "through inference or circumstantial evidence." *AngioScore, Inc. v. TriReme Med., LLC*, 70 F. Supp. 3d 951, 957 (N.D. Cal. 2014) (quoting *Simi Mgmt. Corp. v. Bank of Am., N.A.*, 930 F.Supp.2d 1082, 1099 (N.D.Cal. 2013)). However, "the actual knowledge standard [ ] require[s] more than a vague suspicion of wrongdoing." *In re First Alliance Mortg. Co.*, 471 F.3d at 993 n.4.

The SAC now specifically alleges that ACI had actual knowledge that other defendants were holding out the Liberty Health Plan as comprehensive insurance when it was not. Although some of Plaintiffs' allegations of ACI's knowledge are conclusory, *see* SAC ¶ 173, Plaintiff does allege that ACI knew that the Liberty Health Plan it administered was being falsely advertised by other defendants as comprehensive health insurance to the detriment of consumers, *id.* ¶ 50. Plaintiffs provide some factual details to support this allegation of knowledge. According to the SAC, ACI was identified as a "PPO Claims Administrator" on the Liberty Health Plan cards and purposefully ignored requests for information regarding the plan. *Id.* ¶¶ 49, 50.

These allegations do not establish with certainty that ACI had knowledge of the underlying scheme. But given that ACI was responsible for administering claims for the

Liberty Health Plan, it is plausible that questions and requests for information from duped customers like Plaintiffs would have alerted ACI to the misrepresentations other defendants made about the plan. Unlike the relationship between a bank or similar entity and a fraudster using its services, where a few red flags may not be enough to impute actual knowledge to the entity, *see E-Shops Corp. v. U.S. Bank Nat. Ass'n*, 678 F.3d 659, 664 (8th Cir. 2012), Plaintiffs here allege direct involvement by ACI in the basic operation of the Liberty Health Plan. Given that Rule 9(b) permits knowledge to be alleged generally, the Court declines to adopt a more stringent standard at the pleading stage. The information in the SAC, taken as a whole, *see Casey*, 127 Cal. App. 4th at 1153, states a claim for aiding and abetting fraud or deceit against ACI.

### Conspiracy

"To allege a conspiracy to commit fraud, a plaintiff must show: (1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1039 (9th Cir. 2016) (citing *Kidron v. Movie Acquisition Corp.*, 40 Cal.App.4th 1571, 1581 (1995)). To be liable, a defendant must have "concur[red] in the tortious scheme with knowledge of its purpose." *Kidron*, 40 Cal.App.4th at 1582. While there are distinctions between the forms of liability, the facts needed to allege conspiracy and aiding and abetting liability overlap significantly. *See Howard v. Superior Ct.*, 2 Cal. App. 4th 745, 749 (1992), *as modified* (Feb. 10, 1992). However, to state a claim for conspiracy to commit fraud a plaintiff must allege an agreement with the particularity required by Rule 9(b). *S. Union Co. v. Sw. Gas Corp.*, 165 F. Supp. 2d 1010, 1020 (D. Ariz. 2001). There thus must be sufficient factual allegations to support an inference of, at minimum, a tacit understanding between the parties to the alleged conspiracy. *See In re Sunset Bay Associates*, 944 F.2d 1503, 1517 (9th Cir. 1991).

The Court concludes that Plaintiffs have adequately pleaded a conspiracy to commit fraud claim against ACI. While Plaintiffs do not allege specific facts related to an express agreement, *see* SAC ¶¶ 179, 180, Plaintiffs do allege facts from which one can infer that "at least a tacit understanding" was reached with respect to the allegedly fraudulent limited benefit plan scheme, *id.* ¶¶ 47–48. *In re Sunset Bay*, 944 F.2d at 1517. Plaintiffs allege that ACI was the administrator of the purported "PPO" Liberty Health Plan, the falsely advertised product at the center of the scheme, and purposefully declined to give Plaintiffs more information when they called to contest the limited benefits they received. SAC ¶¶ 49–50. Because the "existence of a conspiracy 'may sometimes be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances,'" *In re Sunset Bay*, 944 F.2d at 1517 (quoting *Greenwood v. Mooradian*, 137 Cal.App.2d 532, 538, (1955)), the Court finds that these facts, combined with Plaintiffs' allegations regarding the relationships between the parties and overall nature of the scheme, suffice at the pleading stage to allege agreement. And similar to the aiding and abetting fraud claim, Plaintiffs have adequately alleged that ACI's administration of the Liberty Health Plan was conduct in furtherance of the scheme.

Accordingly, the Court **DENIES** ACI's motion to dismiss counts 4 and 5.

**B. Counts 1 and 2: UCL and FAL Claims**

Moving Defendants ask the Court to dismiss Plaintiffs' claims under the UCL and FAL because Plaintiffs have not established that they have standing to seek injunctive relief and otherwise cannot argue that legal remedies are inadequate. ECF No. 109 at 10–11; ECF No. 112 at 16–20. Alternatively, Moving Defendants contend that the UCL and FAL claims must be dismissed because Plaintiffs have neither alleged conduct that violates those statutes nor that Moving Defendants' conduct caused Plaintiffs' injuries. ECF No. 109 at 11–13; ECF No. 112 at 10–16.

16

### i.    *Availability of Injunctive Relief under the UCL and FAL*

In its previous order granting in part Defendants' motions to dismiss the FAC, the Court determined that Plaintiffs were required to allege an inadequate remedy at law under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), in order to bring a claim under the UCL or FAL.  ECF No. 89 at 42–43.  Although Plaintiffs argued that legal remedies were insufficient because they sought injunctive relief against Defendants, the Court determined that Plaintiffs had not alleged an actual threat of future harm sufficient to establish standing to pursue injunctive relief.  *Id.* at 43.  Here, Moving Defendants argue that Plaintiffs still have not adequately alleged standing for injunctive relief or that legal remedies are inadequate such that they can pursue restitution.

To have standing to seek injunctive relief, a "plaintiff must demonstrate that he has suffered or is threatened with a 'concrete and particularized' legal harm, coupled with 'a sufficient likelihood that he will again be wronged in a similar way,'" such that the plaintiff's injuries could be redressed by the injunction.  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).  A "plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants."  *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

Although "a previously deceived consumer may have standing to seek an injunction," even if the consumer now knows of the fraudulent practices, the consumer still must allege an actual threat of future harm.  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–71 (9th Cir. 2018).  In *Davidson*, the Ninth Circuit considered whether a consumer who alleged she had previously been deceived by false claims that the defendant's personal cleansing wipe was "flushable" had standing to enjoin the defendant from making such claims in the future.  *Id.* at 970 –71.  The court reasoned that standing may exist in such cases because a consumer "will be unable to rely on the product's

advertising or labeling in the future, and so will not purchase the product although she would like to," or "might purchase the product in the future, despite the fact that it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.* at 969–70. On the facts of that case, the court concluded that the plaintiff had alleged an actual threat of future harm that was sufficiently concrete and particularized because the plaintiff continued to desire to purchase truly flushable wipes and would purchase them from the defendant if possible, but was unable to rely on the information advertised by the defendant in making her purchasing decisions. *Id.* at 971–72. The court also found that the plaintiff had met the redressability prong of the standing analysis because an injunction would require the defendant to make only truthful representations on its wipe products, which would allow the plaintiff to rely on those statements in the future. *Id.* at 972.

In the SAC, Plaintiffs allege that there is an imminent threat of actual future harm because defendants continue to make false representations regarding their health insurance products, preventing Plaintiffs from relying on those representations and creating a risk that Plaintiffs will be deceived into buying "sham insurance products" in the future. SAC ¶¶ 148, 156. Plaintiffs also note that because defendants disguise the entities that are involved in the sale of the health plans, Plaintiffs will be unable to determine whether defendants are behind future statements concerning Plaintiffs' insurance needs. *Id.* These allegations in large part mirror what the Ninth Circuit considered sufficient in *Davidson*, with one possible basis for distinction: the SAC does not explicitly allege that Plaintiffs currently desire to purchase health insurance or have a plan to do so in the future.

The Supreme Court has held that general statements of intent, "without any description of concrete plans," do not satisfy the actual or imminent injury requirement. *See Lujan*, 504 U.S. at 564. Both *Lujan* and the unpublished Ninth Circuit case relied on

by HII and HPI, *Lanovaz*, considered whether the plaintiffs had established standing at the summary judgment stage. *Id.* at 561; *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018). But since *Davidson*, district courts considering standing at the motion to dismiss stage have likewise required plaintiffs to indicate some sort of intent to be in the market for the challenged products in the future, in order for their claim of injury resulting from future misrepresentations to be actual or imminent. *E.g.*, *Liou v. Organifi, LLC*, 491 F. Supp. 3d 740, 753 (S.D. Cal. 2020) (finding plaintiff failed to establish standing because plaintiff "does not allege any facts that suggest he intends to purchase the [product] in the future"); *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1008 (N.D. Cal. 2020) (holding that because complaint had failed to allege a desire to purchase to purchase a smartphone in the future, plaintiffs did not have standing to seek injunctive relief); *Naiman v. Alle Processing Corp.*, No. CV20-0963-PHX-DGC, --- F.Supp.3d ----, 2020 WL 6869412, at *6 (D. Ariz. Nov. 23, 2020) (finding plaintiff did not adequately allege standing because plaintiff did not allege he would purchase defendant's product again or would refrain from doing so because he is unable to rely on defendant's representations).

While Plaintiffs urge the Court to infer from the SAC that they desire to purchase health insurance in the future and argue that Moving Defendants improperly suggest that Plaintiffs are not in the market for insurance, the Court cannot consider facts that are not alleged in the complaint. *See Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (allegations included in opposition to motion to dismiss irrelevant to question of whether plaintiffs stated a claim). The Court does not intend to transform the Article III standing requirements into unnecessary hurdles to pleading injunctive relief claims under California's consumer protection statutes. *See Davidson,* 889 F.3d at 970 (observing the anomalies that would result if previously deceived plaintiffs were unable to pursue injunctive relief under the UCL, FAL, and CLRA merely

because defendants remove the case to federal court).  However, Plaintiffs plead nothing to suggest that they face an actual or imminent threat of injury, at most raising the prospect that there is a threat Plaintiffs will be harmed, but that is entirely dependent on an intention to re-enter the market for health insurance.  *See* SAC ¶¶ 109, 148, 156.

Accordingly, the Court finds Plaintiffs have not adequately pleaded standing to pursue injunctive relief under the UCL and FAL.

### ii.    *Availability of Restitution under the UCL and FAL*

HII and HPI also argue that Plaintiffs' claims for restitution under the UCL and FAL should also be dismissed because the SAC does not correct Plaintiffs' previous failure to sufficiently allege that they lack an adequate remedy at law.  ECF No. 112 at 19.  Plaintiffs assert that the SAC corrects the deficiencies related to the restitution claims and, in the alternative, the Court should revisit its previous order.  ECF No. 124 at 13, n.4.

In *Sonner*, the Ninth Circuit, relying on United States Supreme Court precedent, held that "traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action."  *Sonner*, 971 F.3d at 844.  The court went on to hold that a plaintiff must allege that she "lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA."  *Id.* (citations omitted); *see also Anderson*, 500 F. Supp. 3d at 1009 (finding that "the plaintiffs have not *pleaded* inadequate remedies at law to begin with") (emphasis in original).  Since that decision, district courts have grappled with what allegations are necessary to plead an inadequate remedy at law.  Some like, *Anderson*, have held that "the mere fact that the [complaint] requests damages is not sufficient to show that restitution is foreclosed." *Anderson*, 500 F. Supp. 3d at 1009.  That court suggested that a claim for restitution under the UCL could be maintained if the restitution sought "would go beyond the

damages available" or "be more certain, prompt, or efficient." *Id.*; *see also In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 497 F. Supp. 3d 552, 639 n.67 (N.D. Cal. 2020) (indicating that plaintiffs may be able to seek restitution given that damages may not be recoverable from all defendants).

Following the district court's suggestion in *Anderson*, the Court must determine whether the SAC states a claim for restitution that differs from their claim for damages. Plaintiffs argue that they have pleaded an entitlement to restitution in a greater amount than their damages claim, and thus damages are insufficient.[7] "The object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149, (2003). In contrast, damages seek to compensate the plaintiff for the harm caused by the defendant, thereby returning "the plaintiff to the position he or she would have occupied had the harm not occurred." *See Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 872 (9th Cir. 2017) (citations omitted). As one court has described this distinction, "[r]estitution measures the remedy by the defendants' gain, whereas damages measures the plaintiff's loss." *Nat'l Rural Telecommunications Co-op. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1086 (C.D. Cal. 2003), *on reconsideration in part* (June 5, 2003) (citation omitted).

---

[7] Plaintiffs also argue that restitution is likely to be more certain, prompt, and efficient than legal remedies because calculating restitution would require less individualized analysis for each class member. ECF No. 124 at 17. However, the Court is now focused on whether named Plaintiffs have stated a claim for restitution because a class has not yet been certified. *See Tabas v. MoviePass, Inc.*, 401 F. Supp. 3d 928, 938 (N.D. Cal. 2019). Further, potential difficulties in ascertaining damages as opposed to restitution is less of a hurdle to relief than other situations in which courts have found legal remedies to be inadequate. *See Sharma v. Volkswagen AG*, No. 20-CV-02394-JST, --- F. Supp. 3d. ----, 2021 WL 912271, at *9 (N.D. Cal. Mar. 9, 2021) (distinguishing cases in which "the process of seeking damages would create . . . complications that make that remedy inadequate").

In that sense, Plaintiffs are correct that the measure of restitution would be calculated differently than damages; however, this would almost always be the case because equitable and legal relief are different avenues of making injured parties whole. But an adequate legal remedy need not be an identical legal remedy. It would be anomalous for *Sommer*'s rule to be avoidable merely because of the reality that claims for restitution and damages often will result in different recoveries.[8] *Cf. Sharma v. Volkswagen AG*, No. 20-CV-02394-JST, --- F. Supp. 3d. ----, 2021 WL 912271, at *8 (N.D. Cal. Mar. 9, 2021) (rejecting argument that legal remedies are inadequate when the complaint asserts that damages "are not necessarily the same amount" as restitution); *McFall v. Perrigo Co.*, No. 2:20-CV-07752-FLA-MRWx, 2021 WL 2327936, at *15 (C.D. Cal. Apr. 15, 2021) (finding that plaintiffs' preference to maximize their recovery by seeking restitution under the UCL rather than damages under the CLRA, to which a statute of limitations applied, was insufficient to render legal remedies inadequate). Additionally, as HII and HPI argue, Plaintiffs seek punitive damages, exemplary damages, and treble damages under RICO, which may exceed the amount of restitution they could obtain for the same wrongful conduct. SAC at 72–73. The Court is therefore not convinced that Plaintiffs have adequately pleaded that restitution "would go beyond the damages available." *Anderson*, 500 F. Supp. 3d at 1009.

Because the Court finds Plaintiffs have stated other non-equitable claims against HII and HPI arising from the same conduct, the Court need not reach whether Plaintiffs would have an inadequate remedy at law if, for instance, they were unable to state a claim for damages for that conduct. *Cf. In re JUUL Labs*, 497 F. Supp. 3d at 639 (noting that plaintiffs were likely to be able to amend their complaint to allege remedies at law were

---

[8] Although in *Sonner* itself the plaintiff sought exactly the same sum in restitution as she did in damages, the Ninth Circuit did not suggest this was dispositive to its ruling or that its holding should be limited to that unique situation. *See Sonner*, 971 F.3d at 844.

inadequate because "the allegations regarding unfair conduct are not otherwise coextensive with plaintiffs' legal claims"). Here, Plaintiffs have a legal remedy available to them for the conduct they allege underlies their UCL and FAL claims against HII and HPI—namely, their fraud and RICO claims. *See* ECF No. 124 at 18–20 (arguing fraud and RICO allegations also support UCL and FAL claims).

Lastly, while Plaintiffs contend that the UCL and FAL claims should not be dismissed merely on the grounds that they seek an improper remedy, Plaintiffs have not established that they are entitled to *any* remedy available under these statutes against HII and HPI. *Cf. State Farm Mut. Auto. Ins. Co. v. Coates*, 933 F.2d 1015 (9th Cir. 1991) (quoting *Doe v. United States Dep't of Justice*, 753 F.2d 1092, 1104 (D.C.Cir.1985)) ("[I]t need not appear that the plaintiff can obtain the *specific* relief demanded as long as the court can ascertain from the face of the complaint that *some* relief can be granted") (emphasis in original).

Accordingly, the Court **GRANTS** HII and HPI's motion to dismiss counts 1 and 2 for failure to allege an inadequate remedy at law.

### iii. *Fraudulent, Unfair, or Unlawful Business Practices*

Because ACI did not challenge Plaintiffs' ability to seek restitution, the Court considers whether Plaintiffs otherwise fail to state a UCL claim against ACI. ACI contends that Plaintiffs have not adequately pleaded a UCL claim against it under the fraudulent, unlawful, or unfair prongs. *See* ECF No. 109 at 11–15.

A business act or practice may violate the UCL if it is either "unlawful," "unfair," or "fraudulent." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010). Each of these three adjectives captures "a separate and distinct theory of liability." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (citing *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal.App.4th 861 (1999)). To state a claim under the fraudulent prong of the UCL, a plaintiff must comply with Rule 9(b)'s heightened

pleading standard and must allege that "members of the public are likely to be deceived" by the defendant's acts. *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008); *Kearns*, 567 F.3d at 1125. The unlawful prong incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under the UCL. *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir.2000). As to the unfair prong, "[a]n unfair business practice is one that either 'offends an established public policy' or is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008) (quoting *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal.App.3d 509, 530 (1984)). To bring a claim under the UCL, "a private plaintiff needs to have 'suffered injury in fact and . . . lost money or property *as a result* of the unfair competition." *Rubio*, 613 F.3d at 1203 (quoting Cal. Bus. & Prof. Code § 17204) (emphasis added).

Because the Court finds that ACI's allegedly fraudulent omissions in response to Plaintiffs' requests for information did not directly cause Plaintiffs' injuries, the question is whether ACI's assistance to other defendants in carrying out the scheme qualifies as fraudulent, unlawful, or unfair conduct with the requisite "causal connection" to the harm suffered by Plaintiffs.[9] *Id.* at 1204. While Plaintiffs are correct the California Supreme Court in *In re Tobacco II Cases* found that a UCL claim is materially different than a claim for common law fraud, it explained that the UCL focuses primarily on "defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of

---

[9] ACI protests that Plaintiffs do not actually allege this theory of UCL violation. ECF No. 127 at 3–4. But what matters is whether the facts alleged in the SAC satisfy the elements of the claim and are stated with the requisite specificity, not whether a certain legal theory is unambiguously articulated. *See Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam) ("Federal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.").

protecting the general public against unscrupulous business practices." *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009). The Ninth Circuit has recognized "that an 'unfair practices claim under [the UCL] cannot be predicated on vicarious liability . . . A defendant's liability must be based on his personal participation in the unlawful practices and unbridled control over the practices that are found to violate" the UCL or FAL. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 808 (9th Cir. 2007) (quoting *Emery v. Visa Internat. Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002)). *But see In re First All. Mortg. Co.*, 471 F.3d at 996, n.6 (suggesting that conduct that qualifies as aiding and abetting fraud may, in some cases, violate the UCL). The crux of the Court's inquiry is therefore whether ACI's conduct itself qualifies as unfair, unlawful, or fraudulent.

Although it is a close question, the Court concludes that Plaintiffs have plausibly alleged that ACI personally participated in the fraudulent acts alleged. *Perfect 10, Inc.*, 494 F.3d at 808. Plaintiffs have alleged that ACI intentionally participated in and helped develop the overall "sham" insurance scheme in such a way that enabled the other defendants to effectuate the scheme. SAC ¶¶ 48–51. Given that the goal of the UCL is to deter unlawful business practices, *see In re Tobacco II Cases*, 46 Cal. 4th at 312, the fact that many different entities were involved in the alleged scheme and thus able to conceal their precise role in the fraudulent acts should not defeat Plaintiffs' UCL claim at the pleading stage.

Plaintiffs also argue that ACI's conduct was "unlawful" because it violated the civil RICO statute. The Court previously found that Plaintiffs stated a claim against ACI for RICO conspiracy, 18 U.S.C. § 1962(d). *See* ECF No. 89 at 60. Other courts have found that an alleged violation of Section 1962(d) states a claim under UCL's "unlawful" prong. *See Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 932 n.10 (N.D. Cal. 2013); *State Comp. Ins. Fund v. Capen*, No. SACV151279AGCWX, 2015 WL 13322034, at *9

(C.D. Cal. Dec. 18, 2015); *cf. In re Pomona Valley Med. Grp., Inc.*, 476 F.3d 665, 674 (9th Cir. 2007)) ("An unlawful act is one forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made.") (citation omitted). There is a sufficient "causal connection" between the RICO conspiracy and Plaintiffs' injuries. Accordingly, at the motion to dismiss stage, the Court finds that Plaintiffs state a plausible claim against ACI under the "unlawful" prong of the UCL.

Accordingly, the Court **DENIES** ACI's motion to dismiss count 1.

## C. Count 7: RICO Claims

Lastly, ACI seeks to dismiss Plaintiffs' direct RICO claim.

The RICO Act renders it unlawful "for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . ." 18 U.S.C. § 1962(c). To recover under Section 1962(c), a plaintiff must prove (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity (known as "predicate acts"), (5) causing injury to the plaintiff's "business or property" by the conduct constituting the violation. *See Living Designs, Inc. v. E.I. Dupont de Numours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005).

The Court's previous order found that Plaintiff had failed to plead the "conduct" element of a RICO claim, ECF No. 89 at 57, and thus the Court considers whether the SAC cures this deficiency. Under RICO, "[i]n order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (quoting 18 U.S.C. § 1962(c)). "Of course . . . RICO liability is not limited to those with primary responsibility for the enterprise's affairs . . . [or] to those with a formal position in the enterprise, but some part in directing the enterprise's affairs is required." *Id.* In other

words, "one must participate in the operation or management of the enterprise itself." *Id.* at 185.

"In the Ninth Circuit, to assess whether a defendant had a sufficient role in operation or management to meet the standard of § 1962(c) [and *Reves*], courts consider whether the defendant (1) gave or took directions; (2) occupied a position in the 'chain of command' through which the affairs of the enterprise are conducted; (3) knowingly implemented decisions of upper management; or (4) was indispensable to achievement of the enterprise's goal in that the defendant's position is 'vital' to the mission's success." *Tatung Co., Ltd. v. Hsu*, No. SA-CV-13-1743-DOC, 2015 WL 11072178, at *20 (C.D. Cal. Apr. 23, 2015) (quoting *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008)) (citations omitted).

ACI argues that the SAC does not add any allegations that suggest ACI participated in the conduct of the RICO enterprise. ECF No. 109 at 19. Plaintiffs argue that the SAC adds allegations stating that ACI was an "integral participant" in both "developing and administering the Liberty Health Plan," that ACI had actual knowledge that the plan was being marketed and sold as comprehensive health insurance, that ACI provided substantial assistance to other defendants in implementing the fraudulent scheme, and that "ACI was instructed by the Axis Defendants to pay the benefit amount at issue and to send statements of benefits to Plaintiffs." SAC ¶¶ 48–51.

The Court must accept as true Plaintiffs' new allegations that ACI participated in developing and administering the Liberty Health Plan and paid the limit benefits amount to Plaintiffs and other consumers per Axis Defendants' instruction, despite knowing that the Liberty Health Plan was being marketed to consumers as comprehensive health

insurance.[10]  While the question is close, given that this case is at the pleading stage and RICO should be construed liberally, *see Odom*, 486 F.3d at 547, the Court finds that these allegations are enough to push ACI over the edge from an actor that simply provided goods or services that benefitted the enterprise to a participant in the operation of the enterprise.  Because Plaintiffs allege that ACI had actual knowledge of the scheme and carried out the administration of the Liberty Health Plan in order to further it, they have stated a plausible claim for direct liability under RICO.  *See Baumer v. Pachl*, 8 F.3d 1341, 1345 (9th Cir. 1993); *cf. Tatung Co.*, 2015 WL 11072178, at *20–21 (noting that each defendant "allegedly knew of the wrongfulness of the conduct from the inception of the enterprise . . ., each was rewarded along the way for his active participation, and each played a central (rather than peripheral) role in the enterprise," unlike in *Baumer*).

Accordingly, the Court **DENIES** ACI's motion to dismiss count 7.

### D. Leave to Amend

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  In other words, where leave to amend would be futile, the Court may deny leave to amend. *See id.*; *Schreiber*, 806 F.2d at 1401.

Moving Defendants argue that leave to amend should be denied because Plaintiffs have already had multiple opportunities to amend their complaint.  ECF No. 109 at 20; ECF No. 112 at 20.  While repeated failures to fix the deficiencies in a complaint may

---

[10] While Plaintiffs once again plead some of these facts relating to ACI's participation "[o]n information and belief," *see* SAC ¶ 50, the Court finds they have sufficiently identified facts that provide a basis for their belief.  *Shroyer*, 622 F.3d at 1042.

justify denial of leave to amend, *see Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1155 (9th Cir. 2021), the Court finds it is possible that the Plaintiffs could add further allegations to the complaint that would remedy the shortcomings noted above.

The Court therefore **GRANTS** Plaintiffs a further opportunity to amend the complaint. However, Plaintiffs are cautioned that the Court will not afford them unlimited opportunities to do so. *See Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS in part and DENIES in part Moving Defendants' motions to dismiss. Specifically, the Court:

1. GRANTS HII and HPI's motion to dismiss count 1 and DENIES ACI's motion to dismiss count 1 (UCL);

2. GRANTS HII and HPI's motion to dismiss count 2 (FAL);

3. GRANTS ACI's motion to dismiss count 3 and DENIES HII and HPI's motion to dismiss count 3 (fraud or deceit);

4. DENIES ACI's motion to dismiss count 4 (aiding and abetting fraud or deceit);

5. DENIES ACI's motion to dismiss count 5 (conspiracy to commit fraud or deceit); and

6. DENIES ACI's motion to dismiss count 7 (RICO).

Plaintiffs may file a third amended complaint within 20 days of the filed date of this order.

**IT IS SO ORDERED.**

Dated: July 8, 2021

Hon. Gonzalo P. Curiel
United States District Judge