1
2
3
4
5
6
7
8              **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10   ERIC KETAYI, MIRYAM KETAYI, both        Case No.:  20-CV-1198-GPC-KSC
     individually and on behalf of all others
11   similarly situated, and for the benefit of  **ORDER:**
     the general public,
12                                             **(1) GRANTING IN PART**
13                            Plaintiffs,       **PLAINTIFFS' REQUEST FOR**
                                               **JURISDICTIONAL DISCOVERY;**
14   v.

15   HEALTH ENROLLMENT GROUP, et             **(2) GRANTING IN PART CCG'S**
     al.,                                      **MOTION TO DISMISS;**
16
                             Defendants.       **(2) GRANTING HPI/HII'S MOTION**
17                                             **TO DISMISS;**
18
                                               **(3) GRANTING ACI'S MOTION TO**
19                                             **DISMISS;**
20
                                               **(4) GRANTING ACI'S MOTION FOR**
21                                             **JUDGMENT ON THE PLEADINGS;**
                                               **and**
22
                                               **(5) GRANTING IN PART OCG'S**
23                                             **MOTION TO DISMISS;**
24
25
26
27                                             **[ECF Nos. 142, 143, 145, 158]**
28

                                    1

Before the Court are Motions to Dismiss in Part the Third Amended Complaint of Plaintiffs Eric Ketayi and Miryam Ketayi ("Plaintiffs"), filed by Defendants Health Plan Intermediaries Holdings, LLC ("HPI"), Health Insurance Innovations Holdings, Inc. ("HII"), Administrative Concepts, Inc. ("ACI"), and Ocean Consulting Group ("OCG"). ECF Nos. 142, 145, 153.  Also before the Court is a Motion to Dismiss Defendant Cost Containment Group, Inc. ("CCG") from the case for lack of personal jurisdiction. ECF No. 143.  The motions have been fully briefed.[1]  For the reasons set forth below, the Court **GRANTS IN PART** Defendants' motions to dismiss and motion for judgment on the pleadings, and **GRANTS IN PART** Plaintiffs' request for jurisdictional discovery.

Further, the Court finds that this matter is suitable for disposition without a hearing pursuant to Civil Local Rule 7.1(d)(1) and hereby **VACATES** the hearing.

## I.     BACKGROUND

The Court has previously summarized the factual allegations underlying Plaintiff's claims in its Orders on earlier motions to dismiss filed by Defendants who filed the instant motions, and others.  ECF No. 130 at 2-5.

Plaintiffs Eric Ketayi and Miryam Ketayi filed their initial putative class action complaint on June 26, 2020.  ECF No. 1.  On September 11, 2020, Plaintiffs filed their First Amended Complaint ("FAC").  On February 2, 2021, the Court granted in part and denied in part Defendants' motions to dismiss the FAC.  ECF No. 89.  On April 23, 2021, Plaintiffs filed the Second Amended Complaint ("SAC").  On July 8, 2021, the Court granted in part and denied in part Defendants' motions to dismiss the SAC.  On July 28, 2021, Plaintiffs filed their Third Amended Complaint ("TAC"), which is very similar to the TAC.  ECF No. 134, Pls.' Compl.; see ECF No. 134-1.  The TAC asserts putative class claims for (1) violations of California Unfair Competition Law ("UCL"), Cal. Bus.

---

[1] Plaintiffs' opposition papers and each Defendant's reply briefs are filed, respectively, at:  ECF Nos. 156 and 167 (HII/HPI); ECF Nos. 157 and 166 (ACI); ECF Nos. 165 and 170 (OCG); and 158 and 168 (CCG).

& Prof. Code §17200 *et seq*.; (2) false and misleading advertising under the False Advertising Law ("FAL"), Cal. Bus. Prof. Code § 17500 *et. seq*. (against HEG, HPI, HII, and the Axis Defendants); (3) fraud and deceit, Cal. Civ. Code §1709 (against HEG, HPI, HII, and the Axis Defendants; (4) aiding and abetting fraud; (5) conspiracy to commit fraud; (6) violation of Cal Ins. Code §782 (against Axis Insurance Company only); (7) violation of the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1961 et seq.; and (8) conspiracy to violate federal civil RICO, 18 U.S.C. §1961 et seq. ECF No. 134 ¶¶ 173-257.

On August 18, 2021, HPI and HII filed their motion to dismiss counts 1 and 2 of the TAC under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. ECF No. 142, HPI/HII Mot. On August 19, 2021, Defendant ACI moved to join HPI and HII's motion to dismiss under 12(b)(1), and moved for judgment on the pleadings under 12(b)(3) as to count 1 for violation of the UCL. ECF No. 145, ACI Mot. On September 3, 2021, OCG also moved to dismiss count 1 for violation of the UCL. ECF No. 153, OCG Mot., at 3. On August 18, 2021, CCG filed its motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. ECF No. 143, CCG Mot.

## II.   CCG's Motion to Dismiss for Lack of Personal Jurisdiction

Defendant CCG moves to dismiss all claims from the TAC for lack of personal jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(2). ECF No. 143. Plaintiffs opposes the motion. ECF No. 158.

### a.   Legal Standard

A defendant may move to dismiss a case based on lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). When the defendant challenges personal jurisdiction, "the plaintiff bears the burden of establishing that jurisdiction is proper." *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction

over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014); *see Mavrix Photo*, 647 F.3d at 1223 ("Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits.*"); see also* Fed. R. Civ. P. 4(k)(1)(A).  Under California's long-arm statute, California state courts may exercise personal jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. Code § 410.10. California's long-arm statute is coextensive with federal due process requirements, so "the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004); *Mavrix Phot*o, 647 F.3d at 1225.  For the exercise of jurisdiction to be consistent with due process, a defendant must have sufficient "minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotations omitted).

When there has been no evidentiary hearing, a plaintiff need only put forth a prima facie showing of jurisdictional facts.  *See CollegeSource*, 653 F.3d at 1073; *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true."  *Schwarzenegger*, 374 F.3d at 800 (internal citations and quotation marks omitted). "It is only if the court takes evidence on the issue or rules on the personal jurisdiction question in the context of a trial that a heightened, preponderance of the evidence standard applies."  *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005).

/ / /

/ / /

/ / /

/ / /

/ / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### b.      Discussion

Plaintiffs primarily argue that the Court has specific personal jurisdiction over CCG.  Defendant CCG argues the Court lacks both general and specific jurisdiction, so the Court considers each jurisdictional basis in turn.

### i.      *General Personal Jurisdiction*

"A court may assert general jurisdiction over foreign (sister-state or foreign country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  As to corporations, "the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction." *Daimler*, 571 U.S. at 137 (citation omitted).  Beyond these paradigm bases, only "in an exceptional case" should a court find a corporation's operations in the forum to be "so substantial and of such a nature as to render the corporation at home in that State."  *Id.* at 139 n.19. Exceptional circumstances, as noted in *Daimler*, do not exist merely whenever "a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,'" but only when "that corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" *Id.* at 139 (quoting *Goodyear*, 564 U.S. at 919).  The Supreme Court in *Daimler* cited to its decision in *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952) to exemplify what constitutes "an exceptional case." *Id.* at 139 n.19.  In *Perkins*, the Court held that an Ohio court could exert general jurisdiction over an out-of-state corporation located in the Philippines, because Ohio was the corporations' principal, albeit temporary, place of business during the Japanese wartime occupation of the Philippines, 342 U.S. at 447–48.

The Ninth Circuit has noted the "demanding nature of the standard for general personal jurisdiction over a corporation." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014). The *Daimler* court rejected the argument that a court has general

jurisdiction over a corporation when it "engages in a substantial, continuous, and systematic course of business" in a state.  *Daimler*, 571 U.S. at 138; *see also Kipp v. Ski Enter. Corp. of Wisconsin*, 783 F.3d 695, 698 (7th Cir. 2015) (*Daimler* "raised the bar" for general jurisdiction and "require[s] more than the 'substantial, continuous, and systematic course of business' that was once thought to suffice."); *Amiri v. DynCorp Int'l, Inc.*, Case No. 14cv3333 SC, 2015 WL 166910, at *3 (N.D. Cal. Jan. 13, 2015) (noting that "in the overwhelming majority of cases there will be no occasion to explore whether a *Perkins*-type exception might apply").

The general jurisdiction inquiry does not "focus solely on the magnitude of the defendant's in-state contacts," but must take into account a "corporation's activities in their entirety, nationwide and worldwide." *Daimler*, 571 U.S. at 139 n.20. Therefore, any general jurisdiction analysis must involve a comparative assessment of the defendant's business activities in different locations. *See Lindora, LLC v. Isagenix Int'l, LLC*, 198 F. Supp. 3d 1127, 1137 (S.D. Cal. 2016) (no general jurisdiction where the plaintiff failed to make a comparative assessment and instead solely focused on the defendant's extensive contacts in California). "If the magnitude of a corporation's business activities in the forum state substantially exceeds the magnitude of the corporation's activities in other places, general jurisdiction may be appropriate in the forum state." *Id.*

In the February 2, 2021 Order addressing motions to dismiss the First Amended Complaint, the Court previously found that Plaintiffs had failed to allege facts that a group of Defendants were "essentially at home" in California, nor had they alleged facts that amounted to "an exceptional case" that would justify the exercise of general personal jurisdiction.  ECF No. 89 at 11 (quoting *Daimler*, 571 U.S. at 119, 139 n. 19).  So too here.  The facts in the TAC allege that CCG "is not licensed to sell, market, enroll, underwrite, or administer insurance in California."  TAC ¶ 91.  Therefore, the claims against CCG arise primarily through its financing, management and direction of OCG. *Id.* ¶¶ 93-94.  Plaintiffs allege CCG itself and through OCG, entered a multi-party

contract with Plaintiffs through which CCG provided insurance-related needs, medical savings and enhancement programs, and other applications and fulfillment process materials and that they are "fully integrated into the insurance market and into this scheme with the other Defendants."  TAC ¶ 96-97.   As the Court found previously, merely doing business or contracting to do business with other Defendants in California does not give CCG sufficient continuous and systematic contacts with California to support the exercise of general personal jurisdiction.  *See* ECF No. 89 at 11.  Further, Plaintiffs have not made any serious attempt to allege facts that would lead the Court to conclude CCG is more "at home" in California than they are in other states.  *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015); *Lindora*, 198 F. Supp. 3d at 1137.

ii.  *Specific Personal Jurisdiction*

Where a court seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit in the forum, the exercise of jurisdiction is consistent with due process if the defendant has "purposefully directed" activities at residents of the forum, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984), and the litigation results from alleged injuries that "arise out of or relate to" those activities, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). The Ninth Circuit applies the following three-prong test for determining if the court has specific jurisdiction over a non-resident defendant:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227 (9th Cir. 2011) (citing *Schwarzenegger*, 374 F.3d at 802).

Opposing CCG's motion, Plaintiffs have argued all three prongs are fulfilled because CCG purposefully directed its conduct toward California, the allegations in the complaint arise out of or relate to CCG's activities in the forum, and CCG has not demonstrated this Court's jurisdiction is unreasonable.  ECF No. 158 at 15-28.  In the TAC, Plaintiffs allege that CCG "directs Ocean Consulting Group's day-to-day operations," and both CCG and OCG developed and provided plan documents, fulfillment documents, and insurance ID cards.  TAC ¶ 97.  In addition, "together with HII, HPI and the Axis Defendants was responsible for the development of the ACUSA/Liberty Health fulfillment materials and ID card provided to Plaintiffs and the putative class members."  *Id.*  And Plaintiffs further maintain that CCG "does, in fact, do business in California," has been registered with the California Secretary of State since 2013, and reaches into California to provide insurance related services".  *Id.* ¶ 99.

CCG puts forth the declaration of Robert Hodes, Chief Executive Officer of Cost Containment Group, attesting to CCG's operations.  ECF No. 143-1 ("Hodes Decl.").  Mr. Hodes attests that "CCG has no employees in California," that "CCG is not an insurance carrier and does not issue insurance policies to residents of California or any other state," that "CCG does not hold a resident or nonresident insurance license issued by California, Florida, or any other state," that "CCG does not solicit business in California," and "does not sell or market insurance products," and that "CCG has no contract, agreements or arrangements with any insurance agents to sell or market insurance products."  Hodes Decl. ¶ 2.  However, "CCG is a holding company for its subsidiary corporations, and it provides administrative services and support to its subsidiaries." *Id.*

In their opposition papers, Plaintiffs put forth the Declaration of Joanna Fox in which she attests that her office made a demand on various defendants, including the HII defendants in August 2020, for all personal information concerning Plaintiffs.  ECF No. 158-1, Fox Decl. ¶ 2.  In response to the demand, HII Defendants produced a letter dated February 4, 2020 from HII's counsel to the California Department of Insurance.  *Id.* ¶ 3.

In the letter, HII's counsel explained "Once Mr. Ketayi made the decision to purchase the policy, he was transferred to Cost Containment Group ("CCG") to complete the transaction . . . CCG was responsible for verification of Mr. Ketayi's purchase, his enrollment in the plan and customer service. We have confirmed with CCG that Mr. Ketayi spoke to one of their staff." ECF No. 158-2, Ex. A. to Fox Decl., at 2-3.  Ms. Fox further attests that "[o]n more than one occasion after that date, I asked CCG's counsel for relevant documents to show that CCG was not involved in this scheme, including any applicable contracts with Axis, HII, or other defendants. None were ever provided."  Fox Decl. ¶ 4.

CCG has contested the accuracy of HII's representations in the HII letter. Specifically, Mr. Hodes attested Plaintiffs "incorrectly allege that CCG was 'responsible for verification of Mr. Ketayi's purchase.'" Hodes Decl. ¶ 6 (citing TAC ¶ 90, 99). Mr. Hodes attests that the agent who spoke with Mr. Ketayi was with Health Enrollment Group and that Mr. Martinez confirmed as much in a letter to the California Department of Insurance.  *See* ECF No. 143-2, Ex.1 to Hodes Decl.  Further, "CCG was not responsible for the marketing, sale, enrollment or verification process of the Liberty Health Plan to Plaintiffs" and "CCG also did not create or distribute fulfillment books or ID cards for Plaintiffs' Liberty Health Plan" and "[i]n fact, CCG did not contact Plaintiffs in any capacity" and "CCG does not do any work on behalf of Axis Insurance Company or any of its related entities."  Hodes Decl. ¶¶ 8-9.

The Court must only accept as true the "uncontroverted allegations in the complaint." *Schwarzenegger*, 374 F.3d at 800.  Defendants contest the truth of Plaintiffs' allegations which support exercise of specific personal jurisdiction, essentially claiming that it was other corporations among Defendants who were responsible for the transactions which Plaintiffs attributes to CCG.  *See* Hodes Decl. ¶ 9 ("Axis' letter specifies each entity involved in each step of the process. Neither CCG or Ocean Consulting are referenced at any point in this letter").  And further, CCG argue that

"CCG has presented evidence that it was not involved in the verification process, while Plaintiffs rely only on an unsworn letter written by an attorney with no personal knowledge of the underlying facts," so Plaintiffs have failed to support their assertions about CCG's involvement because they rely only on their own allegations, rather than any evidence contravening CCG's refutations.  ECF No. 168, CCG Reply, at 5.

The Court first considers whether these facts suffice to show that ACI purposefully directed activity towards California or purposefully availed itself of doing business in California.  Plaintiffs assert that because the complaint alleges tort claims, the Court should apply the "effects" test laid out in *Calder v. Jones*, 465 U.S. 783 (1984), which requires the defendant to have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020) (quoting *Mavrix*, 647 F.3d at 1228).  *See* ECF No. 158, Pls.' Opp., at 16.  CCG does not argue one way or the other, but seemingly proceeds under the purposeful availment theory.  ECF No. 143, CCG Mot., at 12-16.

As to the first prong, it is a close question whether Plaintiffs have alleged specific conduct by CCG that could be considered an "intentional act" which CCG has not also contested and provided evidence which tends to rebut its involvement in that conduct. The only direct conduct by CCG alleged by Plaintiffs is that a CCG agent spoke with Mr. Ketayi during the verification process.  TAC ¶ 90.  However, CCG directly contests this allegation, and provides documentary evidence that would tend to refute these facts. They are therefore not "uncontroverted facts" for the purpose of this inquiry.  If indeed CCG was responsible for the verification of Mr. Ketayi's insurance enrollment and an agent of CCG completed the process over the phone, as alleged in the HII letter, then all three prongs would likely be fulfilled.  The crux of the purposefulness inquiry is whether the defendant's involvement in the forum state is merely "random, fortuitous, or attenuated contacts" or the "unilateral activity" of the plaintiff.  *Walden v. Fiore*, 571

U.S. 277, 286 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).  In this case, there are no uncontested facts which support a conclusion that CCG directed activities at California.

Plaintiffs also seek to establish this Court's personal jurisdiction over CCG through an agency theory, as OCG is a subsidiary of and "alter ego" of CCG.  Here, Plaintiffs have put forth a prima facie case that CCG directs the actions of OCG, and that CCG itself played a role in the facts alleged in the complaint.  However, again, many of Plaintiffs' assertions are contested by CCG in their motion.  For example, Plaintiffs alleged that CCG and OCG's alter-ego relationship is such that they do not maintain separate bank accounts or other basic corporate formalities. TAC ¶ 89.  Mr. Hodes contested that allegation, stating "CCG and Ocean Consulting enter into contracts on their own behalf, maintain their own separate bank accounts, finances, and accounting records.  There is no co-mingling of funds between CCG and Ocean Consulting." Hodes Decl. ¶ 4.  The Court is unable to find any concrete evidence that CCG directed, ratified, or had control over the actions of OCG in California in this case.  Accordingly, the Court finds that Plaintiffs have failed to establish that this Court may properly exercise specific jurisdiction over defendant CCG because there is no uncontroverted evidence that CCG purposefully directed its activities at California, nor that CCG had any forum-related activities.  The Court therefore **GRANTS** CCG's motion to dismiss for lack of personal jurisdiction.

### iii.    *Jurisdictional Discovery*

In their opposition, Plaintiffs request jurisdictional discovery should the motions to dismiss for lack of personal jurisdiction be granted.  ECF No. 158 at 29.  Jurisdictional "[d]iscovery should ordinarily be granted where 'pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (quoting *Data Disc*, 557 F.2d at 1285

n.1).  The decision to permit or deny jurisdictional discovery lies in the Court's discretion, but "[i]t would . . . be counterintuitive to require a plaintiff, prior to conducting discovery, to meet the same burden that would be required in order to defeat a motion to dismiss."  *Orchid Biosciences, Inc., v. St. Louis Univ.*, 198 F.R.D. 670, 673 (S.D. Cal. 2001).  At the same time, however, the plaintiff "must at least make a 'colorable' showing that the Court can exercise personal jurisdiction over the defendant."  *Mitan v. Feeney*, 497 F. Supp. 2d 1113, 1119 (C.D. Cal. 2007).  Jurisdictional discovery should be denied where "it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction."  *Wells Fargo & Co v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977).  A district court does not abuse its discretion when the plaintiff's request for jurisdictional discovery is "based on little more than a hunch that it might yield jurisdictionally relevant facts."  *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008).

The Court continues to recognize that Plaintiffs have alleged that "Defendants purposefully disguise the entity that is responsible for each step in Defendants' coordinated scheme."  TAC ¶ 106.  And furthermore, Plaintiffs assert they have attempted to clarify CCG's role in the conduct alleged in the complaint, to no avail.  *See* Fox Decl.  As a result, the extent of CCG's own involvement in, as well as its oversight, control, and direction of OCG's activities as alleged by Plaintiffs' complaint all remains very unclear and is contested by the parties.  While Plaintiffs' allegations do not support a finding of specific personal jurisdiction because CCG contested the underlying facts, Plaintiffs have made a colorable showing that there may be a basis for the Court to exercise personal jurisdiction over CCG.  Of concern to the Court is that while Mr. Hodes attests certain facts that contradict Plaintiffs' complaint, Plaintiffs have also alleged that "[e]ven upon significant investigation it is near impossible to discern what role each individual Defendant played and Defendants themselves have misidentified their roles to the California Department of Insurance."  *Id.*  The Court acknowledges the reality of the

situation: Plaintiffs have based their allegations on the little information they are able to acquire, which is not sufficient for personal jurisdiction.  At the same time, the Court should also not blindly rely on the attestations of interested individuals, nor can the Court make a determination as to whether the Axis letter or the HII letter is *more* accurate in describing CCG's involvement or lack thereof without more information than that which is currently before the Court.  The Court will therefore GRANTS IN PART Plaintiffs' motion for jurisdictional discovery, and will allow Plaintiffs limited jurisdictional discovery into CCG's involvement in the verification, enrollment, and fulfillment process for Plaintiffs' insurance plans.

## IV.   Motions to Dismiss for Lack of Standing to Seek Injunctive Relief

Defendants HPI/HII ask the Court to dismiss under Rule 12(b)(1) Plaintiffs' claims for violations of the UCL (count 1) and FAL (count 2) because Plaintiffs lack standing for injunctive relief.  ECF No. 142, HPI/HII Mot., at 8-18.  Defendant ACI moves to join HPI/HII's motion to dismiss.[2]  ECF No. 145 at 5-6.  Defendant OCG asks the Court to dismiss Plaintiffs' UCL claim for failure to state a claim under Rule 12(b)(6), because Plaintiffs are not entitled to restitution and because Plaintiffs lack standing for injunctive relief.  ECF No. 153, OCG Mot., at 4-8.  Even though each of these motions is fashioned slightly differently, under Rules 12(b)(1) and 12(b)(6), Defendants are asking for substantially the same thing—dismissal of these counts because Plaintiffs lack standing for injunctive relief.[3]  The Court will therefore first determine whether Plaintiffs' TAC sufficiently establishes standing for the injunctive relief they pursue under the UCL (all three defendants) and FAL (as to HII/HPI only).

---

[2]  In their motion, ACI moves to join HPI/HII's motion to dismiss under Rule 12(b)(1).  Because Plaintiff's complaint names ACI in its claims for violation of the UCL, but not the FAL, the Court interprets the motion as one only seeking to join as to the UCL, which is count 1.  ACI also moves for judgment on the pleadings under Rule 12(c).  The Court addresses the motion for judgment on the pleadings separately, below.

[3] Plaintiffs no longer seek restitution in the TAC.

### a.    Legal Standard

To have standing to seek injunctive relief, a "plaintiff must demonstrate that he has suffered or is threatened with a 'concrete and particularized' legal harm, coupled with 'a sufficient likelihood that he will again be wronged in a similar way,'" such that plaintiff's injuries could be redressed by the injunction.  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).  In the context of injuries that may apply to other persons, "a plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

In the Ninth Circuit, such an analysis is governed by the court's holding in *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 969-71 (9th Cir. 2018).  In *Davidson*, the court considered whether a consumer alleged she had previously been deceived by the defendant's false claims that their personal cleansing wipes were "flushable" had standing to enjoin the defendant from making such claims in the future, *id.* at 970-71. The court held that "a previously deceived consumer may have standing to seek an injunction," even if the consumer now knows of the fraudulent practices, but the consumer *must* allege an actual threat of future harm.  *Id.* at 969-71.  In such circumstances, a consumer may have standing under two theories: first, "she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to," or second, she "might purchase the product in the future, despite the fact that it was one marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved."  *Id.* at 969-70.  The Ninth Circuit concluded that the plaintiff did have standing because she had alleged an actual threat of future harm that was sufficiently concrete and particularized because she continued to desire to purchase cleansing wipes that were genuinely flushable, and would purchase the defendant's product, but was unable to rely

20-cv-1198-GPC

on the information defendant advertised when making her purchasing decisions.  *Id.* at 971-72.  Importantly, the court also found the plaintiff satisfied the redressability prong of the standing analysis because, in her case, an injunction would require the defendant to cease falsely advertising its wipes, to make only truthful representations about its attributes, which would allow plaintiff to rely on those statements in the future when making purchasing decisions.  *Id.* at 972.

      **b.    Discussion**

      The Court has previously addressed motions to dismiss on the grounds that Plaintiffs had failed to establish standing for injunctive relief under the UCL and FAL.  In each order, the Court found that Plaintiffs had not "adequately pleaded standing to pursue injunctive relief" under those causes of action.  ECF No. 130 at 20; *see* ECF No. 89 at 43 (finding Plaintiffs had not alleged an actual threat of future harm sufficient to establish standing to pursue injunctive relief).  In the instant motions, Defendants HII/HPI, ACI and OCG make the same argument: Plaintiffs' claim for injunctive relief, as revised in the TAC, still fails for lack of standing.  *See* ECF No. 142, HPI/HII Mot., at 142; ECF No. 145, ACI Mot., at 2; ECF No. 153, OCG Mot., at 6.

      Plaintiffs have renewed their efforts to allege facts sufficient to support standing in the TAC after the Court has twice dismissed Plaintiffs' UCL and FAL claims based on a lack of standing for injunctive relief in the Orders on motions to dismiss the first and second amended complaints.  *See* TAC ¶¶ 10-13.  Specifically, in the Orders on motions to dismiss the Second Amended Complaint, the court said that while the allegations "in large part mirror[ed] what the Ninth Circuit considered sufficient in *Davidson*," there was one "possible basis for distinction" which proved fatal to Plaintiffs bid for standing: "the SAC d[id] not sufficiently allege that Plaintiffs currently desire to purchase health insurance or have a plan to do so in the future."  ECF No. 130 at 18.  While Plaintiffs "urge[d] the Court to infer from the SAC that they desire to purchase health insurance in the future . . . the Court cannot consider facts that are not alleged in the complaint."  *Id.* at

19.  Against that background, the Court considers whether Plaintiffs' TAC has remedied the issues which previously defeated standing.

### i.   *Allegations in the TAC*

In the TAC, Plaintiffs allege that they are "in the market for and desire to purchase inexpensive but comprehensive medical insurance coverage," they "continually search for ideal coverage for their family," and "would consider purchasing health coverage from Defendants if it was at it was represented to be." ECF No. 134, TAC ¶ 11.  Further, because Plaintiffs have no way of determining where the representations made by Defendants are true or false, Plaintiffs "face an imminent threat of actual future harm." *Id.* ¶¶ 11-12.  In their moving papers, HII/HPI, ACI, and OCG argue that Plaintiffs' allegations are not sufficient to establish standing for injunctive relief under *Davidson* because they have neither alleged a concrete and particularized injury nor a sufficient likelihood they will be wronged again by Defendants in a similar way.  *See* ECF No. 142, HII/HPI Mot., at 9-18; ECF No. 153, OCG Mot., at 4-8.

### ii.   *Concrete and Particularized Injury*

As discussed *supra,* under *Davidson*, to allege a concrete and particularized injury sufficient for standing, the TAC must allege that Plaintiffs would like to purchase Defendants' medical insurance coverage, but will not do so because they do not know if the advertised features accurately represent Defendants' products, or that Plaintiffs are at risk of purchasing the same coverage from Defendants because they might assume that Defendants have changed or fixed the coverage plan to align with the advertised features. *See Davidson,* 889 F.3d at 969-70.

Here, Plaintiffs have alleged they are currently in the market for and continually search for health insurance coverage that is inexpensive, comprehensive, and suits their family's needs.  TAC ¶¶ 11-12.  The Court finds that Plaintiffs' assertions that they "would consider" buying Defendants' coverage again is insufficient under *Davidson* and its progeny.  *Davidson*, 889 F.3d at 970 (finding that plaintiff plausibly alleged "she will

be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *See Morizur v. Seaworld Parks & Ent., Inc.*, No. 15-CV-12172-JSW, 2020 WL 6044043, at *12 (N.D. Cal. Oct. 13, 2020) ("in order to establish standing under *Davidson*, a plaintiff must prove they want to or intend to purchase the product in the future").  The Court finds that Plaintiffs' assertions that they are, generally, "in the market for and desire to purchase inexpensive, but comprehensive medical insurance coverage" is not sufficient for the purposes of the standing inquiry.

The Court therefore finds that Plaintiffs have not alleged facts sufficient to support standing for injunctive relief under either the UCL or the FAL.  Supreme Court precedent, which strictly limits standing for injunctive relief, and Ninth Circuit precedent which has laid out the parameters under which parameters might find relief in such circumstances compel the conclusion that Plaintiffs here lack standing.  In the instant case, logic also compels such a conclusion.  If Plaintiffs here had standing, one could imagine that any person or group of persons—both insured and uninsured—could seek to enjoin Defendants, because any person could claim that they *would* consider purchasing Defendants' medical coverage plans if the advertisements truthfully described the plans. Such a broad reading of the harm necessary to seek such a remedy contravenes precedent. Plaintiffs have not adequately alleged a concrete and particularized injury for the purposes of injunctive relief.

### ii.   *Likelihood of Repeat Harm*

The second prong of the standing analysis requires Plaintiffs to demonstrate that the threat of future harm is "actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

From the outset, Plaintiffs have alleged that Defendants engaged in an elaborate scheme which defrauded Plaintiffs and others similarly situated.  TAC ¶¶ 1-8, 20-21, 113-172.  The alleged scheme relied on idiosyncratic methods, including a representative

coaching Plaintiffs on how to respond to verification questions, and which portions of the verification process when the agent verified their eligibility for the Liberty Health Plan. In their motion, Defendants rely on the unique features of the scheme's modus operandi to argue that Plaintiffs cannot possibly be vulnerable to falling for Defendants scheme in the future.  ECF No. 142, HPI/HII Mot., at 14, 16-18.  And thus, Plaintiffs cannot sufficiently allege they are in danger of future deception, because "it is inconceivable that Plaintiffs—confronted by the same sales pitch, the same instructions to ignore 'verification' statements, and the same 'verification' statements disclaiming and contradicting the sales pitch—would fall for the same purported deception a second time." *Id.* at 16.

Ultimately, the fact that Defendants' scheme involves a convoluted, multi-step process that Plaintiffs have investigated and detailed in their complaint, suggests that Plaintiffs are not likely to be victimized again by the same scheme.  The Court acknowledges the irony of the fact that the sophisticated, shrouded nature of Defendants' scheme now shields them from injunctive relief because the scheme was so unique.  *See* ECF No. 156. Pls.' Opp., at 12 ("[Defendants] argue that because the Ketayis have been deceived in the past, they should now be aware of Defendants' future abusive practices and somehow avoid them").  However, the Court is simply not persuaded that Plaintiffs face an actual threat of being harmed again by Defendants in the future.  The Court notes that the Supreme Court has strictly circumscribed a plaintiff's eligibility for the extraordinary remedy of injunctive relief to those who allege a sufficient likelihood they will be subject to repeated harm.  *See Lyons*, 461 U.S. at 111 ("Absent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional.").  The convoluted process described in the challenged scheme does not create a threat of future harm that is "actual and imminent."

20-cv-1198-GPC

### iii.    *Causation and Redressability*

Finally, Plaintiffs must also demonstrate that the injury they've alleged is "fairly . . . trace[able] to the challenged action of the defendant," *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42," and that it is "likely as opposed to merely speculative that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (quoting Simon, 426 U.S. at 43) (internal quotation omitted).  The causal nexus and likely redress requirement is among the "irreducible constitutional minim[a]" for Article III standing.  *Lujan*, 504 U.S. at 560.

In *Davidson*, the Ninth Circuit found the plaintiff satisfied the redressability requirement because enjoining Kimberly-Clark from continuing to advertise its non-flushable wipes as flushable would provide a remedy for the injury plaintiff alleged. *Davidson*, 889 F.3d at 971-72.  In that case, the plaintiff alleged that without the injunction against Kimberly-Clark, she would be unable to discern whether the wipes were, in fact, flushable—it would have otherwise been entirely plausible that Kimberly-Clark had changed their product formula to make it truly flushable, or that they just continued their misleading advertising practices.  The Ninth Circuit agreed, finding plaintiff "m[et] the redressability prong of standing" because the injunction sought "would prohibit Kimberly-Clark from using the term 'flushable' on their wipes until the product [was] truly flushable," a remedy that "would likely redress [plaintiff's] injury by requiring that Kimberly-Clark only make truthful representations on their wipe products upon which [plaintiff] could reasonably rely." *Id.* at 972.

Here, Plaintiffs claim that an injunction would similarly allow Plaintiffs to rely on Defendants' representations of its products and engage with the insurance market without fear they would again be subject Defendants' deception.   ECF No. 134, TAC ¶¶ 11-12, 181; ECF No. 156, Pl.'s Opp., at 12 ("the Ketayis repeatedly allege that, in light of Defendants' past deceptions, they are left with no way to assess the representations about health insurance coverage they encounter").  In the TAC, Plaintiffs allege that they are

20-cv-1198-GPC

"in the market for and desire to purchase inexpensive but comprehensive medical insurance coverage," they "continually search for ideal coverage for their family," and "would consider purchasing health coverage from Defendants if it was at it was represented to be." ECF No. 134, TAC ¶ 11.  Without "employ[ing] too narrow or technical an approach" in determining whether the injury alleged is likely to be repeated, and the related question of whether an injunction is likely to remedy the injury, the Court finds that Plaintiffs have not satisfied the redressability prong.

Plaintiffs may be in the market for "inexpensive but comprehensive medical insurance coverage," but, unlike the plaintiff in *Davidson*—where Plaintiff simply wanted Kimberly-Clark to either only advertise their wipes if they were flushable in fact—or similar cases, it is not clear to the Court what conduct Plaintiffs seek to enjoin. *See, e.g.*, *Williams v. Apple, Inc.*, 19-CV-04700-LKH, 2020 WL 6743911, at *8 (N.D. Cal. Nov. 17, 2020) (finding the injunctive relief sought "would allow [p]laintiffs to understand whether they can rely on Apple's iCloud contract 'with any confidence,'" where plaintiffs continued to be paying iCloud subscribers).  The TAC states that "Plaintiffs seek an order enjoining defendants from engaging in the illegal business acts and practices alleged herein."  TAC ¶ 183.  But unlike flushable wipes or an iCloud contract, or other tangible or discrete consumer products, the business of medical insurance coverage (and related advertising) is highly complex.  In other words, were the Court to enjoin Defendants' "illegal business acts and practices," it is not entirely clear what conduct Defendants would be required to take or not take—must they alter their insurance products to be more "comprehensive" while remaining just as "inexpensive"? And what would that look like?  In any event, because the Court previously found that Plaintiffs failed to allege a concrete and particularized harm or a sufficient likelihood of repeat future harm, the question whether an injunction would remedy the injury is almost purely hypothetical—there is no causal nexus for which an injunction would redress Plaintiffs' injuries.

Because Plaintiffs have failed to allege a concrete and particularized harm, a sufficient likelihood of repeat harm, or redressability, the Court finds that Plaintiffs lack standing to seek injunctive relief under the UCL or the FAL. Accordingly, the Court **GRANTS** the motions to dismiss by Defendants HPI/HII, ACI, and OCG to dismiss counts 1 and 2 of the complaint for lack of subject-matter jurisdiction under Rule 12(b)(1) and for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

## V.      ACI's Motion for Judgment on the Pleadings

In addition to joining HPI/HII's motion to dismiss for lack of standing to pursue injunctive relief, ACI also moved the Court for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Under Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). As ACI acknowledges, the standard for Rule 12(c) is "substantially identical" to that applied under Rule 12(b), except that any party may move for judgment on the pleadings. ECF No. 145, ACI Mot., at 5; *see* Fed. R. Civ. P. 12(c). In a motion for judgment on the pleadings, the court accepts the allegations in the complaint as true, and determines whether "the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). As the Court has already found that Plaintiffs lack standing to seek injunctive relief and have not stated a claim for which they are entitled to injunctive relief under the UCL or FAL, and has dismissed count 1 of the complaint against ACI, the Court reiterates that conclusion here: ACI's motion for judgment on the pleadings is GRANTED and count 1 of the TAC is dismissed against ACI.

/ / /

/ / /

/ / /

## VI.   OCG Challenge to Restitution

The Court next briefly addresses the second grounds on which OCG moves to dismiss Plaintiffs' UCL claim in the TAC.  ECF No. 153, OCG Mot.  In OCG's motion to partially dismiss the Third Amended Complaint, they seek to do so on two separate grounds: under 12(b)(6) for failure to state a claim as to Plaintiffs' claim for restitution, and because Plaintiffs do not have standing for injunctive relief.  The Court has already addressed the motions to dismiss by HII/HPI, ACI and OCG on the grounds that Plaintiffs lack standing for injunctive relief, and addresses OCG's argument about restitution here.

In its motion to dismiss, OCG somewhat confusingly argues that Plaintiffs' allegations "do not give rise to a right to restitution."  ECF No. 153, OCG Mot., at 5.  OCG goes on to note that "Plaintiffs do not request that remedy in their prayer for relief" and "Plaintiffs have pled entitlement to damages, including treble damages . . . and the facts alleged do not indicate that this legal remedy of damages is inadequate such that restitution is needed to make Plaintiffs whole."  ECF No. 153 at 6.  However, OCG was added as a defendant in this case for the first time in the Third Amended Complaint, and this particular line of argument seems to be an effort by OCG to cover its bases.  The Court's previous two orders on the motions to dismiss considered whether, under *Sonner* and *Anderson,* Plaintiffs' First and Second Amended Complaints stated a claim for restitution that differed from Plaintiffs' claim for damages. ECF No. 130 at 20-21; *See* ECF No. 89 at 42.  The Court ultimately found that Plaintiffs had a legal remedy available to them against Defendants HII and HPI because they are entitled to damages for their fraud and RICO claims.  ECF No. 130 at 23. Because the Court's order dismissing the count 1 of the SAC for which Plaintiffs sought restitution made specific reference to Defendants HII and HPI, OCG's motion seeks the same finding from the Court.  However, Plaintiffs do not seek restitution in the Third Amended Complaint, *see*

20-cv-1198-GPC

ECF No. 134, TAC, at 83.  Accordingly, the Court finds that OCG's challenge to Plaintiffs' request for restitution is moot.

## CONCLUSION

For the foregoing reasons, the Court HEREBY:

(1)     GRANTS IN PART Plaintiffs' request for jurisdictional discovery;

(2)     GRANTS IN PART Defendant CCG's motion to dismiss count 1 of the complaint for lack of personal jurisdiction with leave to amend;

(3)     GRANTS Defendant HPI/HII's motion to dismiss counts 1 and 2 of the complaint for lack of standing to seek injunctive relief;

(4)     GRANTS Defendant ACI's motion to dismiss count 1 of the complaint for lack of standing to seek injunctive relief;

(5)     GRANTS Defendant OCG's motion to dismiss count 1 of the complaint for lack of standing to seek injunctive relief; and

(6)     DENIES as moot OCG's challenge to Plaintiff's request for restitution.

**IT IS SO ORDERED.**

Dated:  December 2, 2021

Hon. Gonzalo P. Curiel
United States District Judge

20-cv-1198-GPC